No. 14-2147

---

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

**MICHAEL LETVIN, and
KEITH PHILLIPS,
on behalf of themselves
and all others similarly situated,**
PLAINTIFFS-APPELLANTS

vs.

**JACK LEW, Secretary of Treasury;
SHAUN DONOVAN, Secretary of HUD;
FLAGSTAR BANK, FSB, and
BANK OF AMERICA, N.A., successor by merger to
BAC HOME LOANS SERVICING, L.P., fka COUNTRYWIDE
HOME LOANS SERVICING, L.P.,**
DEFENDANTS-APPELLEES

---

On Appeal from the United States District Court
for the Eastern District of Michigan

---

### APPELLANTS' CORRECTED APPEAL BRIEF

---

**SANDWEISS LAW CENTER, P.C.
BY:  STUART SANDWEISS (P60921)**
Attorneys For Plaintiffs-Appellants
18481 W. Ten Mile Rd., Suite 100
Southfield, MI  48075-2693
(248) 559-2400  Fax:  (800) 577-1716
e-mail:  stuart@sandweisslaw.com

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

i

## Case No. 13-2147

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**MICHAEL LETVIN, and
KEITH PHILLIPS,
on behalf of themselves and all others similarly situated,**
PLAINTIFFS-APPELLANTS

vs.

**JACK LEW, Secretary of Treasury; SHAUN DONOVAN, Secretary of
HUD; FLAGSTAR BANK, FSB, and BANK OF AMERICA, N.A.,
successor by merger to BAC HOME LOANS SERVICING, L.P., fka
COUNTRYWIDE HOME LOANS SERVICING, L.P.,**
DEFENDANTS-APPELLEES

_____/

## APPELLANTS' DISCLOSURE OF CORPORATE
## AFFILIATIONS AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1, Plaintiffs-Appellants Michael Letvin and

Keith Phillips makes the following disclosures:

1.  Are said parties a subsidiary or affiliate of a publicly owned
    corporation?
    NO

2.  Is there a publicly owned corporation, not a party to the appeal that
    has a financial interest in the outcome?
    NO

Dated:  March 19, 2015                  Respectfully Submitted,



                                        **SANDWEISS LAW CENTER, P.C.**
                                        /s/Stuart Sandweiss
                                        By:  Stuart Sandweiss  (P60921)
                                        Attorneys for Plaintiff-Appellant

# **TABLE OF CONTENTS**

**Page**

Table of Authorities ..................................................................... v

Statement In Support of Oral Argument ....................................... x

Statement of Jurisdiction ............................................................ xii

Statement Of The Issues Presented For Review ......................... xiv

Statement of Most Controlling Authority ..................................... 1

Statement of the Case ................................................................. 2

    I.     INTRODUCTION ................................................. 2

    II.    STATEMENT OF FACTS ...................................... 6

    III.   PROCEDURAL HISTORY .................................... 10

Summary of the Argument ......................................................... 13

Standard of Review .................................................................... 18

Argument ................................................................................... 20

    I.     PLAINTIFFS HAVE STANDING TO CHALLENGE
        THEIR RESPECTIVE SHERIFF'S SALES
        AS VOIDABLE .................................................. 20

    II.    OVERBIDDING AT THE SHERIFFS' SALES WAS NOT
        FAIR AND IN GOOD FAITH AND VIOLATED
        MICHIGAN'S FORECLOSURE BY
        ADVERTISEMENT STATUTE AND CAUSED
        PLAINTIFFS ACTUAL PREJUDICE ..................... 23

    III.   CONSTITUTIONAL ISSUES ARE APPLICABLE TO THE
        BANKS EVEN WITHOUT THE GOVERNMENT
        AGENCIES BEING SERVED ............................... 43

SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

IV.    PLAINTIFFS SHOULD HAVE BEEN ALLOWED TO
       AMEND THEIR PLEADINGS IF NECESSARY .................. 45

Conclusion And Relief Requested.............................................................. 49

Certificate of Compliance....................................................................... 51

Proof of Service ...................................................................................... 52

List of Exhibits ....................................................................................... 53

Designation of Trial Court Record .......................................................... 54

SANDWEISS
——— LAW CENTER ———
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

**Page**

# Table Of Authorities

**CASES**

*Altman v. Meridian*, 439 Mich. 623, 635 (1992)..........................................29

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..........................................18

*Apsey v Mem Hosp.*, 477 Mich 120, 127 (2007) ..........................................30

*Bank of American v. Dennis*
    (Case No. 12-11821, E.D. Mich 2013) ..................................26, 29-30

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)....................18

*Belle Isle Grill Corp v Detroit,* 256 Mich. App. 463, 476 (2003)................25

*Burkhardt v City National Bank of Detroit,*
    57 Mich. App. 649,652 (1975)..........................................26

*Danse Corp v Madison Heights*, 466 Mich. 175 (2002) ..............................25

*Davenport v. HSBC Bank USA,*
    275 Mich. App. 344 (2007) *lv. den.,* 480 Mich. 1062, (2008) ...........14

*Diem v. Sallie Mae Home Loans*, 307 Mich. App. 204 (2014) .......... 1, 22, 48

*Duhame v. U.S.*, 119 F. Supp. 192 (Ct. Cl. 1954) ......................................19

*Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007)....................................18

*Estes v. Idea Engineering & Fabricating, Inc.*,
    250 Mich. App. 270 (2000)..........................................29

*Federal Home Loan Mortgage Association v. Kelley*,
    306 Mich. App. 487 (2014).................................... 1, 22, 48

*Federal National Mortgage Ass'n v Wingate*,
    404 Mich 661, 676, n.5 ..........................................21

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

*Gebhardt v. O'Rourke*, 444 Mich. 535 (1994)...............................................29

*Gehrke v. Janowitz*, 55 Mich. App. 643, 646-647 and n. 1 (1974) .................

*Grindstaff v. Green*, 133 F.3d 416 (6th Cir. 1998)......................................19

*Gullatt*, 2010 U.S. Dist. LEXIS 110440, 2010 WL 4070379 ......................40

*Harper v Virginia Dep't of Taxation*, 509 US 86, 97 (1993) ......................34

*Hyde v Univ of Mich Bd of Regents*, 426 Mich 223, 240 (1986) ................34

*In re Criimi Mae, Inc. Secs. Litigation*, 94 F. Supp. 2d 652 (D. Md. 2000)  18

*In re FAC Realty Secs. Litigation*, 990 F. Supp. 416 (E.D.N.C. 1997).......18

*In re Finley*, 408 B.R. 111 (E.D. Mich. 2009) ...........................................27

*In re MCI Telecommunications*, 460 Mich 396, 411;
    596 NW 2d 164 (1999) .......................................................................25

*In re Miller*, 459 B.R. 657 (B.A.P 6th Cir. 2011)........................................27

*Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98 (2012) ......... 1, 14, 22, 48

*King v. Gemini Food*, 438 F. Supp. 964 (E.D. Va. 1976) ..........................19

*Long v Federal Home Loan Mort Corp, et al.*,
    Mich. Ct. App. No. 297438 (Unpublished June 30, 2011) .... 26, 27, 28

*Manufacturers Hanover Mortgage v. Snell*,
    142 Mich. App. 548, 553-554 (1985) ..................................................21

*Michigan Basic Prop. Ins. Ass'n v Ware*,
    230 Mich App 44, 49, 583 NW2d 240 (1998) ...................................28

*Mik v. Freddie Mac*, 743 F.3d. 149 (2014) ...........................................16, 40

*Mitan v Fed. Home Loan Mortg. Corp.*, 703 F.3d 949 (6th Cir. 2012) .......14

SANDWEISS
— LAW CENTER —
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

*Mitan* trial court, 2:10-cv-13286-BAF-MAR Doc # 64 .............................. 14

*Northrip v. Fannie Mae,* 527 F. 2d 23 (6th Cir. 1975)................................ 44

*Pantoja v. Countrywide Home Loans, Inc.,*
    640 F. Supp. 2d 1177, 1185 (N.D. Cal. 2009) ................................. 40

*Pulleyblank v Cape*, 179 Mich App 690, 694 (1989)................. 23, 24, 26, 27

*Richard v. Schneiderman & Sherman, P.C.*, 490 Mich. 1001 (2012).......... 22

*Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 220 (2007)........ 34 - 35

*Rubin v. Fannie Mae*, 587 Fed. Appx. 273 (2014)........................................ 37

*Schulthies v. Barron*, 16 Mich. App. 246, 247-48 (1969) ........................... 21

*Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 308 (6th Cir. 2009) ........... 18

*Senters v. Ottawa Savings Bank,* 443 Mich. 45, 57-58 (1993).................... 21

*Sobh v. Bank of America*, 2013 Mich. App. Lexis 993; 2013
    WL 2460022 (COA Docket No. 308441 – unpublished) ... 1, 15, 22-23

*Trye v Michigan Veteran's Facility*, 451 Mich 129, 135 (1996)................. 25

**STATUTES**

12 USC §5229 ..................................................................................... 16, 40

28 U.S.C. §1291 ........................................................................................ xiii

MCL §600.3201 et seq .............................................................................. 19

MCL §600.3204(3)..................................................................................... 15

MCL §600.3205 .......................................................................................... 8,

MCL §600.3228 .......................... xi, xiv, 1, 13, 15, 23, 24, 25, 26, 28, 29, 30



SANDWEISS
—LAW CENTER—
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

33, 35, 36, 37, 38, 39, 40, 41, 42, 43, 46, 47, 49

MCL §600.3236 ................................................................................ 22

MCL §600.3240(8) ........................................................................... 22

MCL §600.3280 ........................................................... 24, 26, 27, 28, 42

MCL §600.5714 ................................................................................ 21

MCL §600.5801(1) ..................................................................... 20, 21

MCL §600.8302(3) ........................................................................... 21

## CODE OF FEDERAL REGULATIONS

24 C.F.R. §203.500 ............................................................................ 47

24 C.F.R. § 203.556 ........................................................................... 46

24 C.F.R. § 203.604(b) ....................................................................... 46

24 C.F.R. § 203.605(a) ....................................................................... 46

2008 HUD PFS Letter Ruling .............................................................. 46

## COURT RULES

Fed. R. App. Proc. Rule 4(a)(1)(A) ............................................... xiii

Fed. R. Civ. Proc. Rule 12(b)(6) ...................... 9, 10, 11, 18, 19, 23, 43, 48

Sixth Circuit rule 32(A)(7) ............................................................... 51

Sixth Circuit Rule 32(A)(7)(B)(III) .................................................. 51

Sixth Circuit Rule 34(a) ...................................................................... x



SANDWEISS
—LAW CENTER—
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

## OTHER AUTHORITIES

U.S. CONSTITUTION, Equal Protection Clause –
        14TH AMENDMENT ................................................................ 40, 42, 45

Stern, Robert L., SUPREME COURT PRACTICE, p. 671 (2002),
        quoting Brennan in HARVARD LAW SCHOOL OCCASIONAL
        PAMPHLET NO. 9, 22-23 (1967) ............................................. x

Stern, Robert L., SUPREME COURT PRACTICE, p. 671 (2002),
        quoting Ginsburg, ADDRESS TO THE DINNER OF
        AMERICAN LAW INSTITUTE, 58 (5/19/94) ............................. x

Merritt, JUDGES ON JUDGING:  THE DECISION-MAKING
        PROCESS IN FEDERAL COURTS OF APPEAL,
        51 Ohio St. L. J. 1385, 1386-1387(1991) .......................... xi

Wright & Miller, 5C FEDERAL PRACTICE AND PROCEDURE:
        CIVIL 2d § 1368 (2d ed. 1995) ..................................... 18 - 19

SANDWEISS
—— LAW CENTER ——
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

## <u>Statement In Support Of Oral Argument</u>

Pursuant to Sixth Circuit Rule 34(a), the Plaintiff-Appellant asks the Court to schedule this appeal for oral argument. Oral argument will afford counsel the opportunity to address any questions that the Court may have concerning the lower court record and the specifics of the parties' respective positions on appeal. Oral argument will further enable counsel to succinctly place their clients' positions before the Court. It is the Plaintiffs-Appellants' belief that oral argument is necessary, will be beneficial for all involved, and that the decisional process will be significantly aided by this Court's allowance of oral arguments.

Justice William Brennan observed that "oral argument is the absolutely indispensable ingredient of appellate advocacy.... [O]ften my whole notion of what a case is about crystallizes at oral argument." Robert L. Stern, SUPREME COURT PRACTICE, p. 671 (2002) quoting Brennan in HARVARD LAW SCHOOL OCCASIONAL PAMPHLET NO. 9, 22-23 (1967).  Justice Ruth Bader Ginsburg has also explained that oral argument gives counsel "notice and a last clear chance to convince the Court concerning points on which the decision may turn." *Id.*, quoting Ginsburg, ADDRESS TO THE DINNER OF AMERICAN LAW INSTITUTE, 58 (5/19/94).  Sixth Circuit Senior Judge Gilbert S. Merritt likewise recognized that the core of the adversary

process is oral argument, a tradition which provides a "hedge against misdiagnosis and misperformance in the brief, the one last chance of locating a postern missed in the advance survey." Merritt, JUDGES ON JUDGING:  THE DECISION-MAKING PROCESS IN FEDERAL COURTS OF APPEAL, 51 Ohio St. L. J. 1385, 1386-1387(1991).

Oral argument in this case is even more important because one of the fundamental issues to be determined by this Court, the application of MCL §600.3228, is an issue of first impression that has been avoided by both Michigan and federal courts.  Accordingly, it is extremely important for counsel to be able to address specific issues that arise in non-judicial foreclosures and to provide the Court with a "flavor" of what actually transpires in such circumstances and the impact that this case will have on the mortgage foreclosure crisis that continues to permeate the marketplace in Michigan and across the United States.

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

## Statement Of Jurisdiction

Plaintiff Michael Letvin filed his proposed class action Complaint in the U.S. District Court, E.D. Michigan on May 6, 2013.  R. 1, Pg. ID 1. Plaintiff Keith Phillips joined the lawsuit by filing an Amended Complaint on June 18, 2013, R. 6, Pg. ID 21 and a Corrected Amended Complaint on June 19, 2013, R. 7, Pg. ID 31.

Subsequently both Defendants Flagstar Bank ("Flagstar") and Bank of America, N.A. successor to BAC Home Loans Servicing L.P. f/k/a Countrywide Home Loans Servicing, L.P. ("BOA") filed Motions to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6). R. 20, Pg. ID. 68 and R. 24, Pg. ID 168 that the trial court granted in its June 24, 2014 Opinion and Order.  R. 37, Pg. ID 517.

Subsequently, after issuing a Show Cause Order regarding Plaintiffs' failure to serve the government Defendants, the trial court issued its Order Dismissing Action For Lack Of Prosecution, R. 40, Pg. ID 543, wherein it dismissed the government defendants without prejudice.  On the same date the trial court issued its final Judgment, R. 41, Pg. ID 546.

On July 22, 2014 Plaintiffs filed a timely JOINT MOTION TO ALTER, AMEND AND/OR FOR OTHER RELIEF FROM THE JUNE 24, 2014 OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

COMPLAINT AND THE COURT'S JULY 14, 2014 ORDER DISMISSING THE CASE (hereinafter the "Motion for Relief"). R. 42, Pg. ID 547. On August 6, 2014 the trial court denied the Motion for Relief. R. 43, Pg. ID. 558. On September 4, 2014 Plaintiffs filed a timely Notice of Appeal. R. 44, Pg. ID. 563.

Pursuant to 28 U.S.C. §1291 this Court has jurisdiction over the final decision of the Federal District Court.

Fed. R App. Proc. Rule 4(a)(1)(A), provides that, in a civil case, a Notice of Appeal must be filed with the District Court clerk within 30 days after the judgment or order appealed from. Plaintiffs timely filed their Notice of Appeal on September 4, 2014, P. 44, Pg. ID 563.

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

## **Statement of the Issues Presented For Review**

**I.    Do Plaintiffs Have Standing To Challenge Their Respective Sheriff's Sales?**

   Plaintiffs say "yes."
   Defendants say "no."
   The trial court said "no."

**II.    Did The Banks Violate Michigan's Foreclosure By Advertisement Statute (MCL §600.3228) By Overbidding That Was Not Fair And Was In Bad Faith?**

   Plaintiffs say "yes."
   Defendants say "no."
   The trial court said "no."

**III.    Are The Constitutional Issues Applicable To The Banks Even Without Service On The Government Agencies?**

   Plaintiffs say "yes."
   Defendants say "no."
   The trial court said "no.

**IV.    Should Plaintiffs Should Have Been Allowed To Amend Their Pleadings If Necessary**

   Plaintiffs say "yes."
   Defendants say "no."
   The trial court said "no.



18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

## Statement of Most Controlling Authority

Appellants assert that the most controlling authority necessary for resolution of this appeal can be found in:

- MCL §600.3228 - regarding the requirement for a mortgage credit bid to be made fairly and in good faith

- *Kim v. JP Morgan Chase Bank, N.A.*, 493 Mich. 98 (2012) – regarding the standard for setting aside a foreclosure sale – "fraud or irregularity in the foreclosure process" coupled with actual prejudice

- *Federal Home Loan Mortgage Association v. Kelley*, 306 Mich. App. 487 (2014) – which reiterated the *Kim* standard

- *Diem v. Sallie Mae Home Loans*, 307 Mich. App. 204 (2014) – which further reiterated the *Kim* standard

- *Sobh v. Bank of America*, 2013 Mich. App. Lexis 993; 2013 WL 2460022 (COA Docket No. 308441 – unpublished) – which referenced Kim and provided for an "actual prejudice" hearing when, as in this case, the party seeking to set aside a mortgage foreclosure claimed actual prejudice following a wrongful mortgage foreclosure

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

## Statement Of The Case

## I.    INTRODUCTION

Defendants' Motions to Dismiss Plaintiff's First Amended Class Action Complaint, along with their supporting briefs, fit into an all too familiar pattern of lenders claiming complete absolution from any type of wrongdoing associated with mortgage loans that have gone into default because of the real estate bubble created by Defendants and their brethren. While the "brethren" sue each other (e.g., Federal Housing Financing Agency ("FHFA") on behalf of the Government Sponsored Entities ("GSEs"), otherwise known as Fannie Mae and Freddie Mac, suing the seller/servicers in a Mortgage Backed Securities ("MBS")), the homeowners' only hope is to receive some pittance distribution from the class action or class action type settlements against Defendants and others brought by the U.S. Department of Justice or the various state attorney generals.  Notwithstanding, these consumer-based pseudo styled class actions ignore the most crucial issue facing distressed American homeowners today -- the ability or opportunity to acquire their homes at current fair market value, whether through redemption or other means.

There is no greater American ideal then for this country to give its citizens a chance and, as a nation, we must fight to allow that chance.

Homeownership is the fundamental backbone of our economy.  We cannot recover from the Great Recession until we can correct the tsunami that destroyed home equity.  Our "first responder", the Troubled Assets Relief Program "TARP", was a failure, as most Americans believed that this would cause a marketplace "market to market" interaction between the lender and the upside down homeowner to reduce principal before a government mediator using our tax dollars to gap the difference. Clearly, this did not occur. Instead, we have "loan modifications", which allow homeowners to effectively rent the homes they used to own.

The promise of the American Dream, with the intrinsic benefit of home equity appreciation – homes that are free and clear at retirement and estate succession, was made by our government, in part, to camouflage taxes (i.e., in return for home ownership, you pay taxes but get home ownership tax breaks to lessen the burden).  It further promoted what we as a society believed was good and just – universal shelter for a fair and reasonable price.  As Americans we accepted the promise.  Yet, as a result of the 2008 "Great Recession", which was created by the banking and lending industry to cash in on America's home equity spread, the promise has been broken and those who suffer the ill-effects of the broken promise are met with the

SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

3

scornful refrain, "you took the money didn't you?" or "how long have you lived in your house without paying?"

At the core of this controversy are FHA loans, which were created to help provide homeownership to first time home buyers like Plaintiff, Michael Joseph Letvin ("Letvin"), who, in order to qualify for his FHA loan, was required to add as co-borrowers, his parents, Joel K. and Dana D. Letvin.  Letvin did not have the down payment funds and/or credit history to be approved on his own for a conventional conforming loan but could be approved for a federally insured and backed FHA loan through HUD.

Similarly, Plaintiff, Keith Phillips ("Phillips") (collectively, Letvin and Phillips shall be referred to as "Plaintiffs"), was a first time homebuyer over 20 years ago and refinanced his home loan into a FHA insured loan.

However, what HUD and FHA did not realize[1] was that they were unleashing opportunists like Defendants Flagstar Bank, FSB ("Flagstar"), and Bank of America, N.A. ("BOA") (collectively, "Defendants", "Bank" or "Banks"), known loan predators and fraudsters, to create arbitrage loans, i.e., riskless profit.  The arbitrage occurred because when the Banks originated FHA loans they were compensated at a higher rate than when they

_____

[1] For the sake of this Brief, Plaintiffs will ignore what appears to be HUD or FHA's intentional breach of its fiduciary obligations.

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

originated conforming conventional transactions. This provided the economic impetus for the banks to originate FHA loans and inflate appraisals, and then servicing the loans and receiving servicing fees higher than conventional conforming loan pools. Then, given that the loans were insured, the Banks figured out how to obtain defaults on the FHA loans with impunity in order to obtain back 100% of the loan proceeds, as well as all costs of collection. Arbitrage! This Court should not acquiesce to this gamesmanship, which is exactly what happened with the unscrupulous Banks in this case.

Courts sit in equity when deciding the mortgage foreclosure issues complained of by Letvin and Phillips. As will be outlined below, equity provides the basis for this Court to overrule the trial court and to rule in favor of Plaintiffs and to allow this case to proceed to discovery regarding the merits when balancing the considerations at issue in this case. Most important is Plaintiffs continued fight against the overwhelming power of the banking system on the principle that Plaintiffs should have been given the same chance as others to acquire their homes at their current fair market value at the time of the sheriff's sales or at the expiration of their redemption periods. At a minimum, this principle is quasi-constitutional in demanding equal protection under the laws of the United States of America and has had

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

its economic benefit of being able to stay in their homes in return for paying legal fees.  Recently, while this appeal was pending, this principle's moral justification was redeemed when the FHFA (an undisputed government agency) abandoned its improper policy (during the reign of former Director, Edwin DeMarco) of preventing an alleged "moral hazard" by refusing to allow foreclosed upon homeowners and/or their family, friends or third party private lenders to acquire their homes at current fair market value.  Rather, under the new leadership of the FHFA's current Director, Melvin L. Watt, GSEs have begun allowing foreclosed upon homeowners to acquire their homes at current fair market value either by themselves, through a family member or third party. A copy of this "new policy" which was publicly announced on November 25, 2014, is attached as EXHIBIT A.

Similarly, on November 26, 2014 the United States Department of Housing and Urban Development announced its new policy for FHA insurance mortgages (EXHIBIT B) where foreclosed upon homeowners can effectively "repurchase" their foreclosed upon homes as lenders can now obtain HUD insurance proceeds without conveyance of title.

## II.    STATEMENT OF FACTS

Defendant Banks are admitted bad actors that have perpetrated mortgage origination fraud throughout the country.  Now they are engaging

SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

in fraud in the foreclosure process by attempting to collect on their HUD insurance policies' proceeds to be made whole by evicting Letvin from his home located at 9180 Tanbay St., Commerce Township, Michigan 48382 and Phillips from his home located at 2401 Cadigan, Warren, Michigan 48091 (collectively, the "property" or "home"). Defendants had each entered into a FHA loan insured by HUD.

For instance, on July 28, 2008, Letvin executed a $49,608.00 note (the "Note") (the "Letvin Loan") to Flagstar along with a mortgage on his home (the "Mortgage") naming Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Flagstar.  Letvin defaulted under the Loan as **<u>Flagstar instructed Letvin to stop making his payments if he wanted a loan modification</u>**.  The Sheriff's Sale and issuance of the Sheriff's Deed to the Bank occurred on May 10, 2011, where the Bank bid $54,746.28 (the "Letvin Bid"). R. 32, Pg. ID 341.  After the Letvin Bid, Letvin obtained an Appraisal (R. 32, Pg. ID 350) that valued his home at $25,000.00.

On June 12, 2003, Phillips refinanced his home with a FHA mortgage for $102,600.00 (the "Phillips Loan").  Phillips has continuously lived in his home since he acquired the home in 1994.  As a result of being laid-off from Ford (where he worked since 1993), Phillips fell behind on his mortgage payments and was trying to catch up by attempting to modify his home loan.

BOA refused to modify the Phillips Loan and took the home to Sheriff's Sale on June 15, 2012, credit bidding the home for $97,364.76 (the "Phillips Bid"). The Sheriff's Deed and accompanying documentation can be found as attachments to Plaintiff's Response to the Bank's Motions to Dismiss, R. 32, starting at Pg. ID 370[2].

Contrary to MCL §600.3205, BOA refused to have any mediation counseling with Phillips because BOA claimed that Phillips did not claim his home as his principal residence. See R. 32, Pg. ID 374. The Phillips Bid was over $60,000.00 higher than the house's current fair market value. R. 32, Pg. ID 316. Upon information and belief, BOA agreed to "short sale" the property to a third-party for $28,000.00, which Phillips refused to consummate as Phillips was willing to pay that price to "purchase" his home. Notwithstanding, BOA refused to allow Phillips to do so. However, as part of state court litigation, BOA through its counsel agree to allow Phillips to purchase his home for its current fair market value if he would pay the legal fees incurred in this lawsuit. Phillips agreed to these terms and then was informed that the legal bill was in excess of $140,000.00 – for

SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

---

[2] On January 23, 2014 the Trial Court struck R. 32 from the trial court's record. R. 34, Pg. ID 496. Notwithstanding, through its June 24, 2014 Order, R. 37, Pg. ID 518, fn. 2, the trial court VACATED the Order to Strike. A recent review of the trial court's online docket indicates that R. 32 was not restored. Accordingly, a copy is attached as EXHIBIT C.

Defendant to file one Rule 12(b)(6) Motion! This was an outrageous demand and requires a judicial inquiry by this Court and/or referral to the Department of Justice to investigate as, upon information and belief, BOA is going to attempt to recover these outrageous legal fees from HUD – essentially from the American taxpayers[3].

Notwithstanding, the Letvin and Phillips Bids were not in relationship to any fair market value of their respective properties, but were made solely to recover the HUD insurance proceeds, which are based upon the Bids.  In other words, whatever the Bank bids at the sale is what is paid by HUD to the Bank so that the Bank has no incentive to bid anything but the full debt. This vicious cycle effectively precludes homeowners such as Letvin and Phillips from redeeming their homes.  Given Defendants' policy of no short sales to existing homeowners (which the FHFA changed in November 2014) this constitutes the effective eviction of FHA homeowners such as Letvin and Philips from their homes.  Yet, if the bidding process was performed fairly and in good faith, many homeowners, including Letvin and Phillips, would be able to redeem and remain in their homes.

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

---

[3] A copy of the e-mail chain evidencing this demand (which occurred while this appeal was pending) is attached as EXHIBIT D.

9

## III.   PROCEDURAL HISTORY

Plaintiff Michael Letvin filed his proposed class action Complaint in the U.S. District Court, E.D. Michigan on May 6, 2013.  R. 1, Pg. ID 1. Plaintiff Keith Phillips joined the lawsuit by filing an Amended Complaint on June 18, 2013, R. 6, Pg. ID 21 and a Corrected Amended Complaint on June 19, 2013, R. 7, Pg. ID 31.

On August 30, 2013 Defendant Flagstar Bank filed a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6). R. 20, Pg. ID. 68.  On September 26, 2013 Defendant Bank of America, N.A. successor to BAC Home Loans Servicing L.P. f/k/a Countrywide Home Loans Servicing, L.P. ("BOA") filed its own Motion to Dismiss pursuant to Fed. R. Civ. Proc. 7. R. 24, Pg. ID. 168.

On October 1, 2013 the trial court set an October 31, 2013 deadline for the response to BOA's Motion.  R. 25, Pg. ID 163.  Due to the death of Plaintiffs counsel's mother, on October 31, 2013 Plaintiffs filed a Motion for Extension of Time to File Response (R. 27, Pg. ID. 286) that the Court granted on November 12, 2013.  R. 28, Pg. ID 290.

On December 12, 2013 the trial court reset the hearing on the two Motions to Dismiss for May 16, 2014.  R. 31, Pg. ID 300 and later reset them to May 15, 2014, R. 35, Pg. ID 498.

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

In the interim, on January 12, 2014 Plaintiffs filed a late response to the Motions to Dismiss, R. 32, Pg. ID 301.  On January 14, 2014 Defendants filed a joint Motion To Strike Response To Dismiss, R. 33, Pg. ID 488. Before Plaintiffs even had a chance to respond, the trial court granted the Motion To Strike on January 23, 2014, R. 34, Pg. ID 495, even before Plaintiffs had a chance to respond.  In its Opinion and Order Granting The Motions, the trial court vacated the order granting the Joint Motion To Strike, R. 37, Pg. ID 518, fn. 2, although it appears from the trial court docket that the response to the Motion, R. 32, Pg. ID 301, was never re-docketed.  (Thus, a copy of R. 32 is attached as EXHIBIT C).

Two days before the May 15, 2015 Defendant Flagstar Bank filed a Notice of Supplemental Authority, R. 36, Pg. ID. 499.

On May 15, 2014 the trial court held a hearing on the two Motions to Dismiss and took the matter under advisement.  Tr. May 15, 2015, R. 46, Pg. ID 594.  On June 24, 2014 the trial court issued its Opinion and Order granting the two Rule 12(b)(6) Motions.  R. 37, Pg. ID 517.

On June 24, 2014 the trial Court issued a show cause order regarding Plaintiffs' failure to serve the government Defendants.  R. 38, Pg. ID 540. On July 9, 2014 Plaintiffs filed a timely response to the show cause order and a Motion for Issuance of New Summons.  R. 39, Pg. ID 541.  On July

14, 2014 the Court issued its Order Dismissing Action For Lack Of Prosecution, R. 40, Pg. ID 543, wherein it dismissed the government defendants without prejudice along with a Judgment, R. 41, Pg. ID 546.

On July 22, 2014 Plaintiffs filed their timely Motion for Relief.  R. 42, Pg. ID 547.  On August 6, 2014 the trial court denied the Motion for Reconsideration.  R. 43, Pg. ID. 558.  On September 4, 2014 Plaintiffs filed a timely Notice of Appeal. R. 44, Pg. ID. 563.

On November 25, 2014, while the appeal was pending, the FHFA announced its new policy (EXHIBIT A).  Similarly, on November 26, 2014 the United States Department of Housing and Urban Development announced its new policy for FHA insurance mortgages.  (EXHIBIT B).

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

## Summary Of The Argument

There were defects and irregularities in both of the foreclosures that precipitated this lawsuit.  These defects, including failure to comply with MCL §600.3228 caused Plaintiffs actual prejudice as both Plaintiffs were ready, willing and able to redeem their homes for fair market value ("FMV"), the same amounts that the Banks should have bid at the non-judicial foreclosure by advertisement sales in accordance with MCL §600.3228.

Since the trial court rule, our government reversed is policy to allow foreclosed upon homeowners to "repurchase" their homes for FMV, essentially vindicating Plaintiffs' arguments to compel such repurchase. The FHFA's and FHA's policy changes are dramatic as they represent a 180-degree change in policy. Both deal with REO properties and allow the prior homeowners of those homes the opportunity to repurchase them.  This is the instant case and is analogous to a judicial ruling that reverses the then prevailing rules of law.  HUD is a government agency no different than FHFA and even had regulations in place to allow homeowners the opportunity to save their homes -- but nothing was done by the greedy servicer Defendants in this case to comply with these regulations.

13

In *Mitan v Fed. Home Loan Mortg. Corp.,* 703 F.3d 949 (6th Cir. 2012), this Court did an exhaustive analysis of Michigan foreclosure law to determine whether the failure of the foreclosing lender to modify a qualified and eligible homeowner would void a sheriff's sale and deed. The Federal District Court had held that the alleged defect rendered the sale voidable not void. This Court reversed, relying heavily on *Davenport v. HSBC Bank USA,* 275 Mich. App. 344 (2007) *lv. den.* 480. Mich. 1062 (2008).  This Court found that the foreclosing lender's alleged failure to comply with the loan-modification process was a structural defect that made the foreclosure void *ab initio* and remanded for discovery of certain factual issues. Within days of remand, the Michigan Supreme Court decided *Kim v. JP Morgan Chase Bank, N.A.,* 493 Mich. 98 (2012), holding that defective mortgage foreclosures are voidable – not void *ab initio*, and that a foreclosure cannot be set aside absent a showing of prejudice (i.e., that Mitan would have been in a better position to preserve his interest absent the servicer's non-compliance). On remand, the Magistrate found that because Mitan was not able to demonstrate that he was qualified and eligible for a loan modification, the sheriff's sale to Freddie Mac was not subject to challenge as there was no actual prejudice. The *Mitan* trial court adopted the Magistrate's recommendations at 2:10-cv-13286-BAF-MAR Doc # 64.

SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

14

*Mitan*, after remand, recognized that if Mitan was eligible for a loan modification, that this would be both the irregularity (i.e., not approving him for a loan modification when he was eligible contrary to then applicable statute) and the actual prejudice -- that Mitan would have been in a better position to preserve his interest absent the non-compliance, i.e., he would have had a loan modification to replace the foreclosure proceedings.

In *Kim,* the failure to have a required assignment in chain of title was an irregularity; however, the irregularity or violation of MCL §600.3204(3) was voidable and required a showing of actual prejudice. To this end, the Michigan Court of Appeals recognized and ruled after the *Kim* holding that a distressed homeowner was entitled to an evidentiary hearing to determine actual prejudice. See eg. *SOBH v. Bank of America*, 2013 Mich. App. Lexis 993.

In this case, the Banks' full credit bid violated MCL §600.3228 and was both the irregularity and the actual prejudice suffered by Plaintiffs, no different than the failure to modify was in *Mitan* or, alternatively, should be the basis of a remand to determine the existence of actual prejudice in this case.

To date there are no published opinions that analyzed what the terms "fairly and good faith" mean in light of the government's policy change that

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

allows foreclosed upon taxpayers to purchase (or have others do it on their behalf), their homes for current fair market value.

In *Mik v. Freddie Mac*, 743 F.3d. 149 (2014), this Court stated that, with regard to the TARP legislation, Congress provided a private right of action against the Secretary for those harmed by the Secretary's actions. *Mik,* 743 F.3d 149 at 160 (6th Cir. 2014).  The *Mik* court further recognized that 12 USC §5229 provides that "[a]ctions by the Secretary pursuant to the authority of this Act shall be subject to chapter 7 of title 5, United States Code, (the Administrative Procedure Act) including that such final actions shall be held unlawful and set aside if found to be arbitrary, capricious, an abuse of discretion, or not in accordance with law.  However, at the time of Plaintiffs' foreclosure sales there appeared to be a *de facto* policy (as Plaintiffs' counsel has been repeatedly told by counsel for foreclosing lenders) to overbid properties which caused harm to homeowners who were not allowed to repurchase their foreclosed upon homes.

In this case, the Banks, as the servicers for FHA/HUD, denied Plaintiffs the opportunity to redeem, re-purchase and/or re-acquire their homes for the "fair market value" (the same price that a third-party would pay for the home) and, as a result, they were treated differently than similarly situated individuals.  This Court must remand this case for further

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

16

discovery as to the intent of the Banks to have Plaintiffs stop paying on their

loans and in full credit bidding the properties to determine whether these

actions, in light of applicable HUD regulations they brazenly ignored, were

both the irregularity and actual prejudice to justify setting aside the sheriff's

sales in both cases.



18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

### **Standard Of Review**

In the trial court, both Defendants' motions were brought pursuant to Fed. R .Civ. P. Rule 12(b)(6). When ruling on a 12(b)(6) motion, the court must accept all allegations in the complaint as true and must determine whether the allegations plausibly state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Segal v. Fifth Third Bank, N.A*., 581 F.3d 305, 308 (6th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). A court may grant a motion for judgment on the pleadings when no genuine issues of material fact remain and the case can be decided as a matter of law. *Id*. The court may, however, take judicial notice of facts not contained in the complaint without converting the motion into that for summary judgment. *Cf.*, *In re FAC Realty Secs. Litigation*, 990 F. Supp. 416 (E.D.N.C. 1997) (in 12(b)(6) motion, written materials not attached to complaint or incorporated by reference but integral to allegations of complaint and known to nonmoving party); *In re Criimi Mae, Inc. Secs. Litigation*, 94 F. Supp. 2d 652 (D. Md. 2000) (in securities fraud case, court may consider relevant press releases and public disclosure documents referenced and relied upon by plaintiffs

SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

without converting 12(b)(6) motion into one for summary judgment); Wright & Miller, 5C FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1368 (2d ed. 1995) (citing, *inter alia, Grindstaff v. Green*, 133 F.3d 416 (6th Cir. 1998); *Duhame v. U.S.*, 119 F. Supp. 192 (Ct. Cl. 1954). However, all reasonable inferences and intendments from the pleading's factual allegations are drawn in favor of the nonmoving party. See *King v. Gemini Food*, 438 F. Supp. 964 (E.D. Va. 1976).

In their Correct First Amended Complaint, R. 7, Pg. ID 31, Plaintiffs alleged numerous irregularities, frauds, accidents and/or mistakes in the foreclosure process, including violations of Michigan's non-judicial foreclosure by advertisement statutes ("FBAS", MCL §600.3201 et seq) as well as HUD federal regulations.  Plaintiffs further alleged that they suffered actual prejudice as a result of these statutory violations in that Defendants' bids on either of the homes were neither fair nor in good faith, which precluded Plaintiffs from being able to redeem their homes at the current fair market values.

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

## **ARGUMENT**

I.    **PLAINTIFFS HAVE STANDING TO CHALLENGE THEIR RESPECTIVE SHERIFF'S SALES AS VOIDABLE**

Implicit if not explicit in the Banks' motions and the trial court's ruling is the argument that Plaintiffs do not have standing to challenge the Sheriffs' Sales and Deeds for the first time after the expiration of the redemption periods and certainly not at the summary proceedings stage.  The latter is belied by MCL §600.5801(1) that provides:

> **600.5801 Limitation on actions; time periods; defendant claiming title under deed, court-ordered sale, tax deed, or will; other cases.**
>
> Sec. 5801. No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.
>
> (1) When the defendant claims title to the land in question by or through some deed made upon the sale of the premises by an executor, administrator, guardian, or testamentary trustee; or by a sheriff or other proper ministerial officer under the order, judgment, process, or decree of a court or legal tribunal of competent jurisdiction within this state, or by a sheriff upon a mortgage foreclosure sale the period of limitation is 5 years.

In addition to the foregoing statute that allows Plaintiffs five years to challenge a Sheriff's Sale (e.g., "… defendant claims title to the land in question by or through some deed made upon the sale of the premises … by



SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

a sheriff upon a mortgage foreclosure sale…."), Michigan case law recognized that a Sheriff's Deed can be set aside after the redemption period has run at the summary proceedings stage where there is a "clear showing of fraud, or irregularity" in the foreclosure process. See *Schulthies v. Barron*, 16 Mich. App. 246, 247-48 (1969). This standard was embellished with "accident or mistake" by *Senters v. Ottawa Savings Bank,* 443 Mich. 45, 57-58 (1993). *Schulthies* and *Senters* combine to provide that the sale can be challenged based upon fraud, irregularity, mistake and/or accident and MCL §600.5801(1) allows that challenge for up to five (5) years following the sale:

> The Supreme Court has long held that the mortgagor may hold over after foreclosure by advertisement and test the validity of the sale in the summary proceeding. [citations omitted]. Otherwise the typical mortgagor who faces an invalid foreclosure would be without remedy, being without the financial means to pursue the alternate course of filing an independent action to restrain or set aside the sale. [citations omitted]. The mortgagor may raise whatever defenses are available in a summary eviction proceeding. MCL §600.5714; *Federal National Mortgage Ass'n v Wingate*, 404 Mich 661, 676, n.5 (1979). The district court has jurisdiction to hear and determine equitable claims and defenses involving the mortgagor's interest in the property. MCL 600.8302(3); DCR 754.7(b)(1)."

*Manufacturers Hanover Mortgage v. Snell*, 142 Mich. App. 548, 553-554 (1985).

The lack of financial means to challenge a foreclosure sale until summary eviction proceedings resembles Plaintiffs who have standing to

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

challenge the non-judicial foreclosure sale. Indeed, MCL §600.3240(8) (or for that matter MCL §600.3236) is bereft of **any** language that limits a homeowner subject to a wrongful Sheriff's Sale to a "six (6) month" statute of limitations. In *Richard v. Schneiderman & Sherman, P.C.*, 490 Mich. 1001 (2012), the Michigan Court of Appeals held that a sheriff's sale challenge can occur at the summary proceedings stage.

In *Kim v. JPMorgan Chase Bank*, 493 Mich. 98 (2012) the Michigan Supreme Court held that a mortgage foreclosure may be voidable upon the borrower demonstrating a defect or irregularity in the foreclosure process coupled with actual prejudice. "The *Kim* decision established that a mortgagor seeking to set aside a foreclosure by advertisement must allege facts to support three essential aspects of a claim: (1) fraud or irregularity in the foreclosure procedure; (2) prejudice to the mortgagor; and (3) a causal relationship between the alleged fraud or irregularity and the alleged prejudice, i.e., that the mortgagor would have been in a better position to preserve the property interest absent the fraud or irregularity.   See *Kim*, 493 Mich. at 115-116. : *Diem v. Sallie Mae Home Loans*, 307 Mich. App. 204 at p. 7 (2014).  *Kim* was reiterated in *Federal Home Loan Mortgage Association v. Kelley*, 306 Mich. App. 487 (2014) as well.  In *Sobh v. Bank of America*, 2013 Mich. App. Lexis 993; 2013 WL 2460022 (COA Docket

SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

No. 308441 - unpublished), the Michigan Court of Appeals ruled that a foreclosed defendant who sought to overturn a foreclosure sale pursuant to *Kim*, was entitled to a hearing on actual prejudice when, as in this case, the foreclosed homeowner alleged actual prejudice.

In the instant case, both Plaintiffs' actual prejudice was and is their desire and ability to redeem and/or acquire their homes at the current fair market value and Defendants' unfair and bad faith bids that impeded Plaintiffs' ability to do so. Certainly Plaintiffs should have been entitled to obtain discovery and present evidence on these issues. Thus, the trial court erred by granting Defendants Rule 12(b)(6) motions. Accordingly, Plaintiffs ask the Court to overrule the trial court, reinstate the case and remand it back to the trial court for discovery.

## II.    OVERBIDDING AT THE SHERIFFS' SALES WAS NOT FAIR AND IN GOOD FAITH AND VIOLATED MICHIGAN'S FORECLOSURE BY ADVERTISEMENT STATUTE AND CAUSED PLAINTIFFS ACTUAL PREJUDICE

The next issue that this Court must consider is the application of MCL §600.3228 – especially in the context of a foreclosing FHA loan. In its Opinion, the trial court essentially "punted" on this issue by failing to review or analyze the statute in question. Instead, the trial court opined that, based on *Pulleybank v. Cape*, 179 Mich. App. 690, 695 (1989), "credit bids higher

SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

23

than the actual value of the property are allowed even when the bid effectively precluded the mortgagors from exercising their equity of redemption." R. 37, Pg. ID 530.  However, in making this ruling, the trial court erred on two points.

First, *Pulleybank* did not concern the application of MCL §600.3228. Rather, the *Pulleybank* court examined MCL §600.3280 and the *Pulleybank* trial court's ruling that an overbid extinguished a debt such that a mortgagee could not foreclose on a second property but rather had to give credit to the mortgagor for the entire amount bid on the first property, even though it was an overbid.

Second, the trial court failed to examine the language of the statute to determine its meaning.  In fact, this is an issue of first impression as there are no published cases on the application of MCL §600.3228 in the context of foreclosing a FHA loan.  Accordingly, the starting point for this Court's review is the statute itself:

**600.3228 Sale; purchase by mortgage or assigns**

The Mortgagee, his assigns, or his or their legal representatives, may, fairly and in good faith, purchase the premises so advertised, or any part thereof, at such sale.

The above statutory language is clear.  In the instant case, the respective Bids were not made "fairly" because they were 50% above the

SANDWEISS
—LAW CENTER—
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

fair market value of the homes at the time of sale. The Bids lacked any

"good faith" because they were made to trigger the payment of insurance

proceeds to repay the Banks in full -- not to promote homeownership, which

is the mission statement of the entire FHA financing scheme.

> The rules governing statutory construction of a statute are well known. Giving effect to the intent of the Legislature is a fundamental task. We are required to examine the plain language of the involved statutes. *In re MCI Telecommunications*, 460 Mich 396, 411; 596 NW 2d 164 (1999). Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written. *Trye v Michigan Veteran's Facility*, 451 Mich 129, 135 (1996). No further construction is necessary or allowed to expand what the Legislature clearly intended to cover. *In re MCI, supra*, at 411."

*Danse Corp v Madison Heights*, 466 Mich. 175 (2002).

There is nothing ambiguous about the terms "fairly" and "good faith"

as used in MCL §600.3228. Over bidding a property at the sale appears to be

the literal antithesis of these terms.  Analogously, in Michigan it is well

settled law that, where the performance of the contract is in the sole

discretion of a party, the implied contractual covenant of good faith and fair

dealing applies, irrespective of a finding of fraud or bad faith, even though

Michigan law does not recognize a separate cause action distinct from the

contractual cause of action for breach of an implied covenant of good faith

and fair dealing.  See *Belle Isle Grill Corp v Detroit,* 256 Mich. App. 463,

476 (2003).  However, the implied covenant in Michigan, while not a

25

separate cause of action, applies to the performance and enforcement of contracts [i.e., enforcement of mortgage obligations due to default], **especially where the manner of performance is in the sole discretion of a party**. *Burkhardt v City National Bank of Detroit*, 57 Mich. App. 649,652 (1975) (emphasis added).

In this case, the decisions to foreclose and the amount of the bids were in the Banks' sole discretion and thus, pursuant to Michigan law, the Banks had an implied covenant to exercise their bidding rights fairly and in good faith. The trial court should have held an evidentiary hearing to determine the fair and good faith value that Plaintiffs should be allowed to redeem or re-purchase their homes.

Instead, Defendants argued and the trial court ruled that, pursuant to the trial court's unpublished decision in *Bank of American v. Dennis* (Case No. 12-11821) the excess bids do not invalidate the foreclosure sales. Plaintiffs and the trial court further relied on *Long v Federal Home Loan Mort Corp*, *et al*., Mich. Ct. App. No. 297438 (Unpublished June 30, 2011) R. 32, Pɢ. ID. 454, which was cited in *Dennis* for the proposition that an overbid does not violate MCL §600.3228. However, Defendants arguments are misplaced as, just like *Pulleybank*, *Long* concerned good faith in the context of MCL §600.3280, not MCL §600.3228.

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

Plaintiff[s] also argues that the bid was in violation of MCL §600.3280 because, according to plaintiff, Federal Home Mortgage Corporation should not have been permitted to make a credit bid that is higher than what he claims is the actual value of the home. Plaintiff's claims are without merit. MCL §600.3280; *Pulleyblank v Cape*, 179 Mich App 690, 694; 446 NW2d 345 (1989). Assuming, for purposes of resolving the issue, that plaintiff's home sold for higher than its true value, MCL §600.3280 was not violated by the sale. Further, plaintiff is not entitled to any relief because he was unable to redeem his home based on the amount of the credit bid. This Court in *Pulleyblank*, 179 Mich App at 695, acknowledged that a mortgagee's bid at a foreclosure sale may be so high that it 'effectively preclude[s] the mortgagors from exercising their equity right of redemption.' While the validity of such bids was not at issue, this Court's opinion implicitly found no error in the practice." (Footnote omitted).

*Long v Federal Home Loan Mort Corp, et al*., Mich. Ct. App. No. 297438 (Unpublished June 30, 2011), R. 32, Pg. ID 454.

In a footnote the *Long* court stated:

We note that while the amount of the bid made by Federal Home Loan Mortgage Corporation may have, in effect, precluded plaintiff from redeeming his home, the amount of the bid was applied to plaintiff's indebtedness. In that way, he benefited from the high amount of the bid."

*Id*. R. 32, Pg. ID 454.

Both *Long* and *Pulleyblank* involved MCL §600.3280. In *Pulleyblank*, the lender overbid the price specifically to thwart redemption, attempting to argue that it was entitled to a deficiency based upon the actual value of the property against the mortgagor. *See also*, *In re Miller*, 459 B.R. 657 (B.A.P 6th Cir. 2011); *In re Finley*, 408 B.R. 111 (E.D. Mich. 2009). Each of these cases (other than *Long*) applied MCL §600.3280, with the lender or



SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

mortgagee attempting to collect a deficiency balance after a full bid. As in the instant case, *Long* involved the mortgagor's challenge to the full credit bid versus the actual home value. However, in *Long*, the appellate issues were not presented at trial and thus were unpreserved such that review was based upon plain error that would be outcome determinative. (R. 32, Pg. ID 455).

However, such is not the case with the Letvin foreclosure. Also, as noted above, in *Long* there was no challenge as to the validity of such bids. No different than the other cited to cases, the *Long* analysis was based upon MCL §600.3280 **not** MCL §600.3228. Michigan courts have repeatedly held that, to the extent possible, each provision of a statute should be given effect, and each should be read to harmonize with all others. *Michigan Basic Prop. Ins. Ass'n v Ware*, 230 Mich App 44, (1998).

Clearly, in this case (and others like it) the mortgagee's bid is driven not by any market factors but by the necessity to bid the full debt in order to collect the HUD insurance proceeds. Applying the case law cited above as to MCL §600.3280 to render ineffective the unambiguous "fairly" and "good faith" terms of MCL §600.3228 ignores the obligation to harmonize the provisions of the statute.

As was noted above, this is an issue of first impression for this Court as, to date, no state or federal court has analyzed, interpreted and applied the "fairly" and "good faith" terms of MCL §600.3228 which are a challenge to the validity of the Bid in the context of an overbid non-judicial foreclosure by advertisement sale involving a FHA loan. Rather, by ignoring the interpretation of the "fairly and in good faith" terms of MCL §600.3228, the trial court (and others) have effectively rendered these terms as surplasage or superfluous, which runs contrary to Michigan law as Michigan courts have consistently held that "every word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible." *Altman v. Meridian*, 439 Mich. 623, 635 (1992). A court "should presume that every word [in a statute] has some meaning and should avoid any construction that would render a statute, or any part of it, surplusage or nugatory." *Estes v. Idea Engineering & Fabricating, Inc.*, 250 Mich. App. 270 (2000)." As far as possible, effect should be given to every phrase, clause, and word." *Id.* (citing *Gebhardt v. O'Rourke*, 444 Mich. 535 (1994).

In all the cases that the Defendant Banks cited in support of their argument that an overbid is in the homeowners' best interest, including *Bank of America, N.A. v. Dennis*, Case No. 12-11821, 2013 WL 1212602 (Judge Steeh, E.D. Mich. 2013), as well as in the trial court's Opinion, R. 37, Pg. ID

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

530-531, there is absolutely no discussion as to the interpretation or application of the terms "fairly" and "in good faith" in the context of an FHA overbid, leaving one with the impression that the terms are simply legislative surplus. Plaintiffs insist that the terms demand judicial interpretation. Judge Steeh indicated that, if the Legislature intended that a foreclosing lender must only bid fair market value, such terms would be used in the statute. Plaintiffs do not argue with this reasoning, but also do not assert that this is the correct interpretation as our courts have repeatedly stated that "whenever possible, every word of a statute should be given meaning. And no word should be treated as surplasage or made nugatory." *Apsey v. Mem Hosp.* 477 Mich 120, 127 (2007).

Plaintiffs' simple inquiry is that, just because the statute does not specifically state that bidding cannot exceed fair market value, this does not mean that, in every instance, a full credit bid is acceptable -- especially if a foreclosing lender of a FHA loan must full credit bid the loan at sheriff's sale in order to obtain the HUD insurance proceeds. What the latter scenario demands is an analysis of whether these facts are consistent with the terms "fairly and in good faith" as are used in MCL §600.3228. To date the trial court has avoided this inquiry -- this Court should not. Otherwise, the statutory terms "fairly and in good faith" shall remain thoughtlessly reduced

30

to being used in Auctioneer attestations as is the current apparent practice wherein Auctioneer's Affidavits typically state that "[BOA]…purchased the said lands and tenements fairly, and in good faith as deponent verily believes."  See R., 32, PG. ID. 373.

At a minimum, the trial court should have denied the Banks' motions to allow Plaintiffs the opportunity to depose the "Auctioneer" as to why he/she "verily" believed that the Property was purchased "fairly and in good faith" as this may shed some insight as to what and how the Legislature intended these terms to be interpreted and applied. On the other hand, with sarcasm firmly parked at the door, it is likely that, upon inquiry the Auctioneer will give a blank stare and shrug his/her shoulders while stating "that's just the way it is always done."  Such a response should not be good enough for our judiciary in this post-Great Recession era with the almost everyday news of yet another lender settling for billions of dollars for wrongfully foreclosing on American citizens and such lender's participation in the destruction of homeowner equity and the resulting loss of homes.

In the context of a FHA loan, there can be no bid other than a fair market value bid, as this provides homeowners with the chance to redeem and prevents abuse by lenders to gain access to HUD reserved insurance funds, which directly impacts taxpayers. Either HUD or the lender will be

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

31

left with a possible deficiency claim against homeowners like Plaintiffs, who will have many remedies at their disposal to resolve, mitigate, avoid or discharge the liability (Letvin has discharged this liability), and may lead to an upfront negotiation between the parties such that where the distressed homeowner would rather have no deficiency, the FHA foreclosing lender would have the choice to a full debt or credit bid."

Plaintiffs submit that, in the context of  FHA loans, there can be no bid other than a fair market value bid, as this provides the FHA borrower with the opportunity to redeem and prevents abuse by lenders to gain access to HUD reserved insurance funds which directly impacts American taxpayers. Either HUD, or the lender, will be left with a possible deficiency claim against homeowners like Plaintiffs who will have many remedies at their disposal to resolve, mitigate, avoid or discharge the liability (i.e., Letvin has already discharged this liability) and may lead to an upfront negotiation between the parties such that, where the distressed homeowner would rather have no deficiency, the FHA foreclosing lender would then have the choice of a full debt or credit bid.  In this case, Plaintiffs seek the right to redeem their properties at their current fair market value and their inability to do have caused them actual prejudice.  Indeed, with regard to Phillips, BOA had agreed to a $28,000 short sale (which Philips has the

SANDWEISS
LAW CENTER™
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

ability to immediately fund) – not the almost $100,000 credit bid. Plaintiffs believe that their Amended Complaint clearly outlines this argument. To the extent that the Court disagrees, Plaintiffs seek the ability to amend their pleadings. It is clear that based on these facts Plaintiffs are entitled to proceed to trial on the merits and Defendants are not entitled to judgment on the pleadings.

Plaintiffs' position is that in the instant cases, at the non-judicial sheriff's sales, the Defendant Banks' bids were not driven by market forces, but were rather driven by the desire to maximize the banks' insurance recovery under the applicable FHA HUD insured loans, and that the Defendant Banks should **not** be allowed to benefit from American taxpayers for a home equity diminution caused by their bad acts. Essentially, Plaintiffs assert that the Banks' "good faith and fair" bid should be a bid at the properties' fair market value. By our courts accepting the aforementioned argument as the proper application of the "fairly and in good faith" terms of MCL §600.3228 in the context of FHA HUD insured loans, there would be less damage to American taxpayers and would give the distressed homeowner a fighting chance to stay in his or her FHA financed home -- if such homeowner could arrange the necessary funds to redeem their homes at the fair market value.

In its June 24, 2014 Opinion, the trial court rejected Plaintiffs argument and, instead, relied on the "fact" that a "full credit bid" at the sheriff's sale was a benefit to the homeowner because it eliminated any deficiency judgment. However, such "full credit bid" effectively eliminates any chance for a distressed homeowner to redeem his or her underwater home and runs contrary to the purpose of the TARP legislation.

Given the FHFA's and FHA's policy reversal, it also is no longer the government policy of the land! While the new FHA policy proposes to only go into effect for post February 1, 2015 foreclosures, such policy violates the general rules for policy changes. "The general rule is that judicial decisions are to be given complete retroactive effect." *Hyde v Univ of Mich Bd of Regents*, 426 Mich 223, 240 (1986). Rules determined in opinions that apply retroactively apply to all cases "still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule[s]." *Harper v Virginia Dep't of Taxation*, 509 US 86, 97 (1993). "The threshold question is whether 'the decision clearly established a new principle of law.'" *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 220 (2007) (citation omitted). Michigan's Supreme Court has held that cases that properly interpret statutes, even if prior case law has held differently, "restore[d] legitimacy to the law" and, thus, are "not a

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

declaration of a new rule, but . . . a vindication of controlling legal authority." *Id.* at 222 (quotation marks and citation omitted).

Analogously, allowing foreclosed upon homeowners to repurchase their homes or for third parties to repurchase on their behalf after sheriff's sales, expiration of redemption periods and/or prior to eviction was clearly a new principle of government policy. The New Policy vindicates what Plaintiffs and other foreclosed upon homeowners have been fighting for all these years -- the right to repurchase their homes or loans at FMV.  It is anticipated that Defendants will argue that the New Policy does not apply to them as "private" lenders.  However, given that both Plaintiffs' loans are FHA loans, and the policy change applies to the FHA, such argument is without merit.

Moreover, Plaintiffs assert that this New Policy requires that MCL §600.3228 be interpreted to either mean that a foreclosing lender cannot overbid a property or, if the property is overbid, the foreclosing lender must offer the property to the foreclosed upon homeowner for the FMV. Moreover, defendants are not "private" but servicers or agents for HUD, a government agency, and who have received billions of dollars in TARP funds.

The impact or apparent impact of MCL §600.3228 on the foreclosures in the instant case is hopefully more obvious. In the trial court the Banks argued that there was no law or regulation requiring a lender to "full credit-bid properties" which, in the case of an "underwater loan" (where the amount owed exceeds the fair market value of the property) means an "overbid" (a credit bid in excess of the fair market value of the property). This was consistent with prior unpublished holdings of Michigan courts (set forth above) that an overbid actually helps a distressed homeowner as it eliminates a potential deficiency judgment against him/her and thus it is "in good faith and fairly" to full credit bid at the sale of an underwater home. Notwithstanding, in the real world, an overbid is like a death sentence to a distressed homeowner whose goal is to remain in his or her home, as it essentially means an eviction. Because the redemption amount following an overbid far exceeds the fair market value of the property, it also far exceeds the amount that the distressed homeowner could hope to borrow to save the property – either from family, friends, banks or hard-money lenders. Potentially, a deficiency judgment could be addressed either through a payment plan or through bankruptcy. However, the homeowner would still benefit, as the homeowner would have a place to live. The community would benefit as well with continuity of home ownership thus eliminating

the potential for blight, which, as has been reported in the news and

discussed in the Detroit bankruptcy case, has certainly plagued this area.

Yet, this does not occur.

This Court must address the claim that a 50% or more overbid was not

made "fairly and in good faith" (in the context of attempting to set aside a

foreclosure sale). Recently, in an unpublished opinion, *Rubin v. Fannie

Mae*, 587 Fed. Appx. 273 (2014) this Court stated in *dicta* that "although

§600.3228 requires fairness and good faith, it does not, by its terms, require

a fair market value bid." The million-dollar question then becomes what

does MCL §600.3228 require? To date, the undersigned has not found a

single published or unpublished federal or state opinion that has actually

analyzed these terms. Rather, in all of the cases where homeowners have

argued that an overbid does not comply with MCL §600.3228 the courts

have "punted" by simply opining that an overbid helps the distressed

homeowner by avoiding a deficiency judgment.

Plaintiffs demand that this Court address this issue – what do the

words "fairly and in good faith" mean in the context of a mortgage

foreclosure sale. Or, are these words simply surplasage? In other words, if

the statute allows a bank to recover insurance proceeds if the property is sold

for fair market value at the foreclosure sale, why is there an unwritten policy

SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

of requiring full credit bids?  Moreover, why does HUD not have an across the board policy as to how to bid?

Indeed, the rulings by both the federal and state courts that a full credit bid does not violate MCL §600.3228 leaves considerable discretion to the Banks who have received over $700 Billion from our Treasury to full credit bid underwater homes or discount the bid either to fair market value ("FMV") or to another amount either below or greater than FMV.  However, when exercising this "discretion", what results is that similarly situated homeowners are treated differently.

For example, if a foreclosing lender bids FMV (as opposed to a full credit bid) for homeowner X's home, homeowner X is subject to a deficiency claim to which homeowner X may not desire while homeowner Y, who wants to be able to redeem his home for FMV and deal with the deficiency may have to deal with his lender making a full credit bid and not being able to redeem the property.  These opposite scenarios constantly play out in the real world without any expressed policy in place.  So far, NO court has interpreted the "in good faith and fairly" terms of MCL §600.3228 and NO court has analyzed how or why the foregoing example does not violate Equal Protection.   Accordingly, Plaintiffs demand that this Court wade into these brave new waters and rule that Banks violated MCL §600.3228 with

SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

its full credit bid which was 50% over the FMV of the respective Properties owned by each Plaintiff at the time of sale and which was both the irregularity in the foreclosure process and the actual prejudice the resulted.

The danger of the courts' continued failure to render any interpretation of these terms as part of MCL §600.3228 in the context of a FHA loan is that in those situations where the foreclosing lender of a FHA loan "underbids" the debt and then pursues a deficiency judgment, these terms cannot logically be interpreted to equally apply in these opposite scenarios and not result in a violation of equal protection. Indeed, the undersigned was involved with a case in Macomb County, Michigan where such an underbid or "fair market" bid of FHA financed debt occurred at the sale which then resulted in a deficiency judgment against the borrower and a lawsuit and judgment in Macomb County Circuit Court to recover the deficiency. **That borrower was receiving food stamps!**

In the instant case, **both Plaintiffs would have redeemed their homes if the bid at their respective Sheriff's Sale was even remotely close to fair market value or was made fairly and in good faith**. Certainly, from Plaintiffs' standpoint the similarly situated Macomb County homeowner referenced above was treated more fairly than Plaintiffs with the visa-versa result from the standpoint of the Macomb County homeowner. In

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

39

other words, **if an overbid on a FHA loan was made "fairly and in good faith" as is required by MCL §600.3228, how is an underbid on a FHA loan also "fairly and in good faith"?  Alternatively, if an "underbid" on a FHA loan was made "fairly and in good faith" as is required by MCL §600.3228, how is an overbid also made "fairly and in good faith"?**  This apparent violation of the equal protection clause of the U.S. Constitution demands that this Court not abrogate its responsibility to interpret the "fairly and in good faith" terms of the statute and "punt" (as the trial court did) by stating what the terms are allegedly not.  Even if the Equal Protection Clause is perceived by this Court to be inapplicable, the Court must still interpret the meaning of "fairly and in good faith" as to FHA loans.

In further support of the foregoing is this Court's recent holding in *Mik v. Federal Home Loan Mortgage Corp.*, 743 F. 3d. 149 (6th Cir. 2014), where this Court held that:

> "Congress provided a private right of action against the Secretary [of Treasury] for those harmed by the Secretary's actions, but it did not provide a private right of action against individuals or non-governmental entities who violate TARP's provisions. 12 U.S.C. § 5229; see also *Gullatt*, 2010 U.S. Dist. LEXIS 110440, 2010 WL 4070379, at *5; *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1185 (N.D. Cal. 2009)."

In the instant case, Plaintiffs' Complaint is chiefly against the government because Plaintiffs argue that the *laissez-faire* government's



SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

policies violated the TARP provisions by not setting forth a uniform policy on bidding on foreclosed upon homes where the foreclosing lender or the owner of the mortgage obligations at the time of the sale had either received TARP funds and/or the loan was FHA insured.  As a result of this failure, coupled with foreclosing lenders not bidding "fairly and in good faith" at Michigan sheriff sales, the named Plaintiffs and the other members of their potential class were damaged.  Defendant Banks were necessary parties because they claim an interest in the subject properties.  However, contrary to Defendant Banks' arguments, Plaintiffs have a private right of action against the Government Defendants with all the Defendants inextricably intertwined where there is a taking of an American taxpayer's home. Accordingly, Defendant Banks had no standing to demand that Plaintiffs Complaint be dismissed as to these Government Defendants.

Moreover, the trial court committed palpable error in failing to provide any interpretation of the "fairly and in good faith" terms of MCL §600.3228 when rejecting Plaintiffs argument that, in the context of an FHA financed HUD insured loan, the only "fairly and in good faith" result would be a fair market bid or evidence that Defendant Banks had followed the HUD guidelines before commencing foreclosure. By offering no interpretation of the terms "fairly and in good faith" other than what they

allegedly are not – (eg. that the terms do not require that the foreclosing lenders who were found liable by the United States Department and/or state attorney generals for their bad acts and were fined billions of dollars) this Court has essentially ignored the existence of these terms which has resulted and will continue to result in similarly situated homeowners being treated differently in violation of the equal protection clause of the 14th Amendment to the United States Constitution, or, at a minimum, common law principles of equity and fairness.

At the end of the day, this Court must apply the clear and unambiguous terms of MCL §600.3228, harmonize that statute with MCL §600.3280, and find that to have overbid the property to recover HUD insurance proceeds is neither fair nor good faith. In addition to the foregoing statutory obligation, there is a contractual obligation for the Banks to act fair and in good faith when exercising their bid rights. Thus, this Court must either hold an evidentiary hearing to determine the current fair market value of the respective properties in order to allow each Plaintiff the opportunity to redeem at that price, or to set aside the sales as void as Plaintiffs have shown both a defect in the foreclosure process and actual prejudice by the Banks violating MCL §600.3228.

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

Accordingly, the trial court erred by granting the Defendant Banks' Motions to Dismiss and further erred by not extending the summons and allowing Plaintiffs to serve the Government Defendants who are necessary parties to this action. Failure to correct this error will effectively result in Plaintiffs having to bifurcate their claims by having to file a new lawsuit against the Government Defendants while appealing the ruling as to the Defendant Banks. Certainly this would not be judicial economy or benefit any necessary party. For these reasons Plaintiffs urge this Court to overrule the trial court and to remand this case for proceedings on the merits and by setting aside the Order granting the Defendant Banks Rule 12(b)(6) Motion. Furthermore, Plaintiffs ask this Court give guidance by interpreting the "fairly and in good faith" terms of MCL §600.3228; and by ordering that the summonses should be extended to allow Plaintiffs to serve the Government Defendants.

### III.    CONSTITUTIONAL ISSUES ARE APPLICABLE TO THE BANKS EVEN WITHOUT THE GOVERNMENT AGENCIES BEING SERVED

Both Defendant Banks are specially chartered by an Act of Congress under federal banking law, Flagstar as a Federal Federal Savings Bank and BOA as a National Banking Association. Accordingly, each is a federal instrumentality. Moreover, the Banks crossed over the "private" line upon



SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

43

receiving both bail-out funds through TARP and reimbursement for all foreclosure costs and loan deficiencies caused by their very own malfeasance by accepting insurance proceeds from HUD.  By doing so, the banks subjected themselves to constitutional arguments that they must treat similarly situated borrowers the same.   In *Northrip v. Fannie Mae,* 527 F. 2d 23 (6th Cir. 1975) the Court of Appeals stated that, "we do not suggest that our investigation of state involvement would end so abruptly in another case" (*Id.* at 28), setting forth the following standard: "**a finding [of state involvement] hinges on weighing a number of variables, principally the degree of government involvement, the offensiveness of the conduct, and the value of preserving a private sector free of from the constitutional requirements applicable to the government institutions**." *Id.* (emphasis added).

In this case, while the Banks may argue that they are not federal instrumentalities subject to the due process and/or equal protection requirements of the United States Constitution, Plaintiffs disagree – especially because Plaintiffs believe that the Banks are actually alter-egos for government entities such as Fannie Mae, Freddie Mac, the FDIC and/or the office of comptroller currency.  In any event, Plaintiffs should be allowed discovery to ferret out this issues, and determine the relationships

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

between the Banks and the federal government – especially because of the TARP funds that the Defendant banks received.  Plaintiffs are also entitled to determine how these Banks have treated similarly situated FHA mortgagors and whether or not the Banks failure to allow such homeowners to buy their homes for the same price as other similarly situated people violates the equal protection clause of the 14th Amendment.  This inquiry is not only owed to the named Plaintiffs, but is also owed to all of the potential class members as well as the American taxpayers who, ultimately, are funding these Banks.  Accordingly, the trial court erred by dismissing the case in favor of Defendants.

## IV.     PLAINTIFFS SHOULD HAVE BEEN ALLOWED TO AMEND THEIR PLEADINGS IF NECESSARY

In the trial court's ruling, the trial court opined that Plaintiffs failed to state claim because their Amended Complaint was not specific enough and did not allege that they attempted to redeem the property, thus "they cannot show how any alleged defects in the notice prejudiced them."  R. 37, Pg. ID 537.  The trial court further opined that there is "nothing in the record indicating that the Plaintiffs even attended the foreclosure sales" and that "Plaintiffs also have not and do not claim that they could have paid off the entirety of their loans at any time in the foreclosure process or in the six

SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

months thereafter."  Id.  However, in making that determination the trial

court misconstrued Plaintiffs irregularities in the foreclosure process claim.

As was outlined in great detail above, the Banks violation of MCL

§600.3228 is the defect or irregularity that caused the actual prejudice – the

fact that Plaintiffs could not redeem their house for fair market value as they

were ready, willing and able to do.  Contrary to the trial court ruling that the

only irregularity in the foreclosure procedure was stated in paragraph 63 of

the Amended Complaint, R. 37, Pg. ID 534, Plaintiffs Corrected Amended

Complaint, R. 7, contains numerous allegations as to fraud and irregularities

in the foreclosure process.  See eg. pp. 29 – 35 which allege that:

29.    Specifically, in this case, the Foreclosing Lenders did not engage in loss mitigation with the Named Plaintiffs in a timely fashion as required by 24 C.F.R. § 203.605(a).

30.    The Foreclosing Lenders did not have a face to face meeting or make reasonable effort to have a face to face meeting with the named Plaintiffs "before three full monthly installments due on the [M]ortgage [were] unpaid" as required by 24 C.F.R. §203.604(b).

31.    The Foreclosing Lenders did not accept partial payments from Plaintiff as is required by 24 C.F.R. §203.556.

32.    The Foreclosing Lenders instructed the named Plaintiffs to stop paying on their Mortgage Loans in violation of the Pre-foreclosure Sale ("PFS") policies of HUD. See, 2008 HUD PFS Letter Ruling.

33.    Instead, as a result of the policies and/or regulations set up by Treasury and/or HUD to ensure that foreclosing lenders are able to recoup any losses from the federal government



SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

and/or from insurance programs designed to benefit the foreclosing lenders, Foreclosing Lender made a full credit bid on the named Plaintiffs' Property which was far in excess of the actual market value making it impossible for the Named Plaintiff to redeem the property.

34.    Defendants' actions violate the spirit and intent of 24 C.F.R. §203.500 and result in foreclosing lenders such as the named Defendants taking taxpayer dollars from the American public for a crisis created by the lenders.

35.    This arbitrary and capricious policies enacted by the Government and used by the foreclosing lenders, including the named Defendants further violate the equal protection clause of the United States Constitution as they permit anyone, but the occupant of the property, including the named Plaintiff, to purchase the property at the fair market value.

See also paragraphs 64 – 65 wherein Plaintiffs referenced the defects and

irregularities as well as the actual prejudice:

64.    Defendants conduct further violated MCR §600.3228 which allows a lender to purchase a foreclosure property for fair market value, but does not allow the lender to overbid the fair market value which is exactly what took place in this case.

65.    As a result of the policies and/or regulations set up by Treasury and/or HUD to ensure that foreclosing lenders are able to recoup any losses from the federal government and/or from insurance programs designed to benefit the foreclosing lenders, the Foreclosing Lender purchased the house at a Sheriff's sale by making a full credit bid on the named Plaintiffs' Property which was far in excess of the actual market value making it impossible for Defendant to redeem the property.



SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

At the May 15, 2014 hearing, Plaintiffs asked for the ability to amend their pleading if the trial court believed that it was insufficient.  R. 46, Pg. ID 588.  In its ruling the trial court cited Fed. R. Civ. Proc. Rule 15(a) for the proposition that any amendment would be futile because it would not withstand a Rule 12(b)(6) motion to dismiss.  R. 37, Pg. ID 537.  Certainly, as was outlined above, the trial court erred as, given Plaintiffs the benefit of the doubt as to all of their factual allegations, Plaintiffs should at least have been able to withstand a Rule 12(b)(6) Motion as, if Plaintiffs' allegations are true (which they are presumed to be in a Rule 12(b)(6), based on *Kim*, *Kelley* and *Diem*, Plaintiffs should have been allowed to seek to set aside the wrongful foreclosure sales.

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fox (800) 577-1716

## Conclusion And Relief Requested

The bottom line is that Plaintiffs have set forth plausible claims such that, if true, their respective foreclosure sales should be set aside. Plaintiffs alleged defects and irregularities in the foreclosure process that caused them actual prejudice, as given the overbids, which were not made fairly, in good faith and in accordance with MCL §600.3228, Plaintiffs were unable to redeem their homes. Both the new FHA and FHFA policies vindicate Plaintiffs arguments.

Accordingly, the trial court erred by not allowing discovery as to these disputed issues and thus Plaintiffs ask this Court to overrule the trial court, determine that there are disputed issues of fact; reinstate this case, and order that Plaintiffs are entitled to discovery.

At the same time, and in order to promote judicial economy, Plaintiffs ask the Court to order the trial court to extend the additional summonses so that the government defendants can be served and also participate in discovery. At the same time, if the Court determines that Plaintiffs pleadings are incomplete or somehow deficient, Plaintiffs ask the Court to order the trial court to allow them to amend.

Wherefore, based on the foregoing, Plaintiffs ask the Court to overrule the trial court, reinstate the case, order that Plaintiffs are entitled

SANDWEISS
—LAW CENTER—
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

to discovery on the disputed issues and extend the summonses against the

government Defendants.

Dated:  March 22, 2015                    Respectfully submitted,

                                          **SANDWEISS LAW CENTER, P.C.**

                                          **By:  STUART SANDWEISS  (P60921)**
                                          Attorneys for Plaintiff
                                          18481 West Ten Mile Road, Suite 100
                                          Southfield, Michigan  48075-2621
                                          (248) 559-2400   Fax (800) 577-1716
                                          stuart@sandweisslaw.com

SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan  48075
(248) 559-2400
Fax (800) 577-1716

## Certificate Of Compliance

Pursuant to 6th Cir.R.32(A)(7)(C), the undersigned certifies that this Brief complies with the type-volume limitations of 6th Cir.R.32(A)(7)(B).

1.    Including of the exempted portions in the 6th Cir. R.32(A)(7)(B)(III), the Brief contains 13,221 words.

2.    The brief has been prepared in proportionately spaced typeface using Microsoft Word in Times New Roman 14 Point Type.

3.    If the Court so requests, the undersigned will provide an electronic version of the Brief and/or a copy of the work or line printout.

4.    The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 6th Cir. R.32(A)(7), may result in the court's striking the brief and imposing sanctions against the person signing the Brief.

Respectfully Submitted,

**SANDWEISS LAW CENTER, P.C.**

**By:  Stuart Sandweiss  (P60921)**
Attorneys for Plaintiffs-Appellants
18481 West Ten Mile Rd., Suite 100
Southfield, Michigan  48075
(248) 559-2400   Fax (800) 577-1716
e-mail:  stuart@sandweisslaw.com

Dated:  March 22, 2015

51

**Proof Of Service**

Stuart Sandweiss (P60921), Attorney for Plaintiff-Appellant, certifies

that he served a copy of Appellant's Corrected Appeal Brief and Appendix

on all counsel of record, through the ECF system on March 31, 2015 and

April 9, 2015.

Respectfully Submitted,

**SANDWEISS LAW CENTER, P.C.**

**By:  Stuart Sandweiss  (P60921)**
Attorneys for Plaintiffs-Appellants
18481 West Ten Mile Rd., Suite 100
Southfield, Michigan  48075
(248) 559-2400   Fax (800) 577-1716
e-mail:  stuart@sandweisslaw.com

Dated:  April 9, 2015



**List of Exhibits**

A.      FHFA "New Policy" – November 25, 2014

B.      FHA "New Policy" – November 26, 2014

C.      Trial Court Record – R. 32

D.      E-mail Chain – re Offer to Allow "Repurchase"

SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

# Designation Of Trial Court Record

| Date | Docket No. | Docket Text | Pg. ID |
|------|-----------|-------------|--------|
| 5/6/13 | 1 | Complaint and Jury Demand | 1 - 10 |
| 6/18/13 | 6 | Amended Complaint with Jury Demand | 21 - 30 |
| 6/19/13 | 7 | Corrected Amended Complaint | 31 - 42 |
| 7/9/13 | 14 | Stipulated Order | 55 - 56 |
| 7/30/13 | 16 | Stipulated Order | 59 - 60 |
| 8/30/13 | 20 | Flagstar Motion to Dismiss | 68 - 162 |
| 9/3/13 | 21 | Notice of Hearing | 163 |
| 9/26/13 | 24 | Bank of America Motion to Dismiss | 168 - 279 |
| 10/1/13 | 25 | Notice of Hearing | 280 |
| 10/31/13 | 27 | Motion for Extension to Time | 286 - 288 |
| 11/12/13 | 28 | Order Granting Motion for Extension | 289 - 291 |
| 12/12/13 | 31 | Re-Notice of Hearing | 300 |
| 1/12/14 | 32 | Response to Motions to Dismiss | 301 - 487 |
| 1/14/14 | 33 | Joint Motion to Strike | 488 - 494 |
| 1/23/14 | 34 | Order Granting Motion to Strike | 495 - 497 |
| 4/16/14 | 35 | Re-Notice of Hearing | 498 |
| 5/13/14 | 36 | Notice of Supplemental Authority | 499 - 516 |
| 6/24/14 | 37 | Opinion and Order Granting Dismissal | 517 - 539 |
| 6/24/14 | 38 | Show Cause Order | 540 |
| 7/9/14 | 39 | Response to Show Cause Order | 541 - 542 |
| 7/14/14 | 40 | Order Dismissing Case | 543 - 545 |

SANDWEISS
LAW CENTER

18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716

7/14/14 ...... 41 .......... Judgment .................................................................. 546

7/22/14 ...... 42 .......... Motion to Alter, Amend Or For Other Relief .. 547 - 557

8/6/14 ........ 43 .......... Opinion and Order Denying Motion To Alter . 558 - 562

9/4/14 ........ 44 .......... Notice of Appeal ............................................ 563 - 565

10/20/14 .... 46 .......... Transcript - May 15, 2014 Hearing ................. 567 - 595

SANDWEISS
LAW CENTER
18481 West Ten Mile Road
Suite 100
Southfield, Michigan 48075
(248) 559-2400
Fax (800) 577-1716